**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brooke Schneider,<br><br>    Plaintiff,<br><br>vs.<br><br>Scottsdale Unified School District No. 48,<br><br>    Defendants. | No. CV-21-01521-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Scottsdale Unified School District No. 48's ("Defendant") Motion to Dismiss (Doc. 25) in which Defendant moves the Court—under Federal Rule of Civil Procedure 12(b)(6)—to dismiss Plaintiff Brooke Schneider's ("Plaintiff") first Amended Complaint for failure to state a claim upon which the Court can grant relief. (Doc. 25 at 1). The Motion is fully briefed and ready for review. (Docs. 25, 28, & 29). For the following reasons, this Court will grant the Motion in part and deny the Motion in part.

## I. BACKGROUND

Plaintiff was employed as a teacher at Defendant's Yavapai Elementary School under two, consecutive, one-year teaching contracts from June 12, 2018 until her resignation on March 16, 2020. (Doc. 21 at 4). In October 2019, near the beginning of Plaintiff's second year at Yavapai, the school's principal, Charles Rantala, began looking for a teacher to assist with an after-hours robotics class. (*Id.* at 7). Plaintiff expressed her interest and agreed to teach the class, with written approval from Rantala. (*Id.*). The after-

school class was not part of Plaintiff's agreed-upon salaried work, however, so Rantala informed her that he would have to set up a separate billing code. (*Id.*). Rantala told Plaintiff that the billing code process was started on October 29, 2019, and that it could take up to 10 business days to be completed. (*Id.*).

Rantala apparently delayed in setting up the billing code, however, and Plaintiff logged at least eight (8) after-school hours of unpaid teaching time before the billing code process was completed on November 20, 2019. (*Id.* at 8). When Plaintiff asked to be paid for those unpaid hours, Rantala's secretary, Judy Edmonson, told Plaintiff that she could not be paid for that time. (*Id.*). On December 9, 2019, Plaintiff reported the issue to Defendant's HR representative and requested a clarification of Defendant's payment policies (the "Wage and Hour Complaint"). (*Id.*). The next day, the HR representative sent an email to Rantala concerning the issue; the email included a statement by the HR representative that "We have to pay her for time worked." (*Id.*).

Over the next two months, Plaintiff alleges various acts of retaliation by Defendant in response to her Wage and Hour Complaint, including a "Letter of Direction" for alleged insubordination from Rantala and two poor performance evaluations from Rantala that demoted her status as a teacher and triggered the issuance of a Notice of Inadequacy and Remediation Plan ("Pre-Terminative Discipline"). (*Id.* at 8–10). The Pre-Terminative Discipline subjected Plaintiff to dismissal if she failed to satisfy Rantala's Remediation Plan within forty-five days. (*Id.* at 10). In February, Plaintiff alleges that she sent a letter complaining about the retaliation to HR, and that she took a doctor-recommended, medical leave of absence from work due to the anxiety and stress she was enduring in the workplace. (*Id.* at 11–12).

On March 16, 2020, Plaintiff alleges that Defendant presented her with "an ultimatum" that required her to either:

> (i) immediately return to the un-remediated hostile work environment;
>
> (ii) obtain approval for indefinite, unpaid FMLA leave;

2

>   (iii) resign effective March 16, 2020 and pay Defendant $2,000 in liquidated damages to be released from her 2019/2020 teaching contract; or
>
>   (iv) be subject to a finding by the Defendant of contract abandonment and suffer the resulting stigma and professional consequences of that determination.

(*Id.* at 14). Plaintiff alleges that her health precluded an immediate return, that she could not afford to take indefinite and unpaid leave, and that a finding of contract abandonment would put her professional future at risk. (*Id.*). As a result, Plaintiff alleges she had no choice but to resign and pay the liquidated damages. (*Id.*).

Plaintiff alleges that Defendant retaliated against her, in violation of the FLSA, when she complained about Defendant's failure to pay her at least minimum wage for the after-school hours. (*Id.* at 15–20). Plaintiff also alleges that her resignation amounted to a constructive discharge, and that she was therefore deprived of her constitutionally protected property interest in continued employment, without Due Process. (*Id.* at 20–23).

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief" so the defendant is given fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Rule 8(a)(2)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

## III.  DISCUSSION

Defendant argues that Plaintiff's claims fail to state valid legal claims upon which the Court may grant relief and that therefore this Court should dismiss Plaintiff's Amended Complaint in its entirety. (Doc. 25 at 3). The Court will address Plaintiff's claims in turn.

*A. FLSA Retaliation Claim*

The FLSA's anti-retaliation provision makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3). The Ninth Circuit has held that such a complaint does *not* need to be formally filed with the Department of Labor or in a federal court, but instead may be a complaint made directly to the employer. *Lambert v. Ackerley*, 180 F.3d 997, 1003–08 (9th Cir. 1999). The complaint may be oral or written, but the key is that the employer is provided with fair notice that the complaint could subject the employer to a later claim of retaliation. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 13–14 (2011). To establish an FLSA retaliation claim, a plaintiff "must show (1) [s]he is engaged in activity protected by the FLSA; (2) the defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *See, e.g.*, *Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953, 975 (D. Ariz. 2020).

The parties here dispute only whether Plaintiff's Wage and Hour Complaint constituted an "activity protected by the FLSA." The Ninth Circuit has not meaningfully addressed the "protected activity" requirement in the FLSA retaliation context. It has, however, dealt with the issue in the Title VII arena. The elements of FLSA and Title VII retaliation claims are the same—both require plaintiffs to show they suffered discrimination or an adverse employment action because they engaged in statutorily protected conduct. *Compare Ader*, 465 F. Supp. 3d at 975 (stating three-part standard for prima facie FLSA retaliation claim) *with Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (stating same three-part standard for Title VII retaliation claim). The Court will therefore refer to Title VII caselaw to the extent it is helpful in determining whether Plaintiff's complaint constituted "protected activity." *See McBurnie v. City of Prescott*, 511 Fed. Appx. 624, 625 (9th Cir. 2013) (nothing that Title VII anti-retaliation provision is "substantially identical" to FLSA anti-retaliation provision); *see also Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (addressing "protected activity" element

under Title VII and holding that its decision was "equally sustainable under the [FLSA]").

In the Title VII context, the Ninth Circuit has held that a Plaintiff's complaint in opposition to an unlawful employment practice only constitutes protected activity if "it refers to *some* practice by the employer that is allegedly unlawful." *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) (emphasis in original). That said, the allegedly unlawful employment practice does not need to be *demonstrably* unlawful. *Id.* (citing *Sias v. City Demonstration Agency*, 588 F.2d 692, 695–96 (9th Cir. 1978)); *see also E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994, 1005 (9th Cir. 2002). Instead, anti-retaliation protection is accorded "whenever the opposition is based on a 'reasonable belief' that the employer has engaged in an unlawful employment practice," regardless of whether the practice was *actually* unlawful (the "reasonable belief standard"). *Zellerbach*, 720 F.2d at 1013; *see also Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir. 1987) ("[T]he employee need only reasonably believe that the employer has engaged in an unlawful employment practice."); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2001) ("It is unnecessary that the employment practice actually be unlawful."); *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021) ("[O]ur precedents have long recognized that [Title VII] protects an employee who opposes employer conduct in the mistaken but reasonable belief that the conduct is unlawful.").[1]

In the present case, Defendant argues that Plaintiff could not have had a reasonable belief that Defendant engaged in unlawful wage and hour practices because Plaintiff—as a public-school teacher—is exempted from the relevant FLSA minimum wage provisions.[2]

---

[1] In fact, "[e]very circuit that has considered the issue . . . has concluded that opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated." *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984) (listing cases from various circuits).

[2] That Plaintiff is exempted from the FLSA's minimum wage provisions is not in dispute. *See* 29 U.S.C. § 213(a)(1) ("The [minimum wage provisions] shall not apply with respect to . . . any employee employed in the capacity of . . . teacher in elementary or secondary schools.").

5

(Doc. 25 at 3). Defendant contends that Plaintiff's exempt status *necessarily* renders her Wage and Hour Complaint objectively unreasonable. In making this argument, Defendant is careful to point out that it is *not* arguing for a "demonstrably unlawful" standard:

> [Defendant] is not advocating for a rule in which protected activity only arises from opposition to conduct that is "demonstrably unlawful." [Defendant] simply asks that the Court apply the normal rule that a plaintiff's belief must be *objectively reasonable*, with the recognition that when the statute at issue *explicitly* provides that the conduct at issue is *not* unlawful, the plaintiff's contrary belief *cannot* be said to be "reasonable."

(Doc. 29 at 2 (emphasis in original)). In response, Plaintiff acknowledges her exemption from the FLSA but nonetheless argues that—at the time she lodged her complaint with HR—she reasonably believed that Defendant was violating the FLSA's minimum wage requirements. (Doc. 28 at 6, 9). Plaintiff argues that the Ninth Circuit's reasonable belief standard is more forgiving—that so long as a plaintiff had a "good-faith belief" that her employer was violating the law, her subsequent complaint is protected from retaliation even if the law was not actually violated. (*Id.* at 9–10).

The question before this Court, then, is whether Plaintiff's exempt status necessarily precludes her from meeting the reasonable belief standard. On one hand, as Defendant contends, Plaintiff could not have reasonably believed that Defendant's conduct was unlawful because the FLSA explicitly *permits* the conduct with respect to teachers by exempting them. On the other hand, it may have still been reasonable for Plaintiff to believe the conduct was unlawful, especially if Plaintiff's limited knowledge of the law is accounted for in the reasonableness analysis. The question boils down to whether the Ninth Circuit's reasonable belief standard is an objective one, a subjective one, or some combination of both. The Ninth Circuit has not directly addressed this question.

In *Learned v. City of Bellevue*, the Ninth Circuit acknowledged the above-mentioned and well-settled principle that "[a]n employee need not establish that the opposed conduct *in fact* violated the Act in order to establish a valid claim of retaliation." 860 F.2d 928, 932 (9th Cir. 1988) (emphasis added). The holding elaborated further,

however, noting that the opposed conduct must still "*fairly fall* within the protection of Title VII to sustain" a retaliation claim. *Id.* (emphasis added) (citing *Silver v. KCA, Inc.*, 586 F.2d 138, 142 (9th Cir. 1978) and *Sias*, 588 F.2d at 695). In *Learned*, the plaintiff opposed "what he believed was discrimination based upon physical and mental limitations only." *Id.* The Ninth Circuit found this insufficient, as Title VII only protects against discrimination based upon race, color, religion, sex, or national origin. *Id.* The opposed conduct—discrimination based on physical and mental limitations—did not "fairly fall" within the ambit of Title VII and therefore Plaintiff's complaint was not based on a reasonable belief that Defendant violated Title VII. *Id.*

Approximately six years later, the Ninth Circuit reached a somewhat inconsistent holding in *Moyo v. Gomez*, a case in which the plaintiff, Moyo, alleged he was fired for refusing to discriminate against black inmates. 40 F.3d 982, 984 (9th Cir. 1994). At issue was whether the inmates were "employees" protected under Title VII. *Id.* at 984–85. If so, then Moyo engaged in a protected activity by opposing his employer's discrimination against them. *Id.* The Ninth Circuit reversed the lower court's dismissal of the retaliation claim for three reasons. *Id.* at 985. First, Moyo may have been able to amend his complaint to obviate any need to determine the inmates' employment status.[3] *Id.* Second, the Ninth Circuit found that the facts of the complaint, on their own, failed to definitively show that the inmates were not "employees" under Title VII—in other words, Moyo may have still been able to prove that they were employees. *Id.*

Third, and most relevant to the issue presently before this Court, the Ninth Circuit found that—even if the inmates were not employees—Moyo still could have stated a

---

[3] Specifically, Moyo could have amended his complaint to show that he was discharged not for opposing his employer's discrimination of the inmates, but rather for opposing his employer's alleged practice of requiring *him*, as a condition of his employment, to discriminate against the inmates. *Moyo*, 40 F.3d at 985. This subtle shift in pleading would have rendered the determination of the inmates' employment status "wholly irrelevant" because "requiring an employee to discriminate is itself an unlawful employment practice." *Id.*

7

retaliation claim "if he could show that his belief that an unlawful employment practice occurred was 'reasonable.'"[4] *Id.* The Ninth Circuit explained that "[a]n erroneous belief that an employer engaged in an unlawful employment practice is reasonable, and thus actionable under [Title VII], if premised on a mistake made in good faith. A good-faith mistake may be one of fact or of law." *Id.* at 984. "The reasonableness of [a plaintiff's] belief that an unlawful employment practice occurred must be assessed according to an objective standard—one that makes due allowance, moreover, for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims." *Id.* at 985. Notably, *Moyo* made no mention of *Learned*'s "fairly fall" language. In the end, the Ninth Circuit reversed and remanded the case, and declined to decide whether Moyo had met the reasonable belief standard. *Id.*

This Court has previously found *Learned* and *Moyo* to be inconsistent. *See Maner v. Dignity Health*, 350 F. Supp. 3d 899, 908 (D. Ariz. 2018), *aff'd*, 9 F.4th 1114 (9th Cir. 2021). "Under *Learned*, complaints about conduct are not protected for purposes of a retaliation claim unless the conduct 'fairly fall[s] within the protection of Title VII.'" *Id.* (citing *Learned*, 860 F.2d at 932). "Under *Moyo*, the conduct need not 'fairly fall' within Title VII. It can fall outside Title VII so long as the plaintiff had limited knowledge and simply made a mistake of law." *Id.* (citing *Moyo*, 40 F.3d at 984–85). This Court chose to follow *Learned* rather than *Moyo* for three specific reasons:

> First, the Ninth Circuit has instructed that the earlier case (*Learned*) controls over the later inconsistent case (*Moyo*) because the panel that decided the later case had no authority to overrule Ninth Circuit precedent. . . . Second, the inconsistent statement in *Moyo* can be viewed as dictum because it was one of three different reasons the court gave for its ruling. . . . Third, no Ninth Circuit decision has cited *Moyo* for the proposition that mistakes of law can support a retaliation claim, while the Ninth Circuit has reiterated

---

[4] This, of course, was merely a restatement of the Ninth Circuit's reasonable belief standard—the same standard set forth in prior cases like *Zellerbach*, *Jurado*, and *Learned*. *See, e.g.*, *Zellerbach*, 720 F.2d at 1013 ("[P]rotection will be accorded whenever the opposition is based on a 'reasonable belief' that the employer has engaged in an unlawful employment practice.").

8

> *Learned*'s holding that complained-of conduct must "fairly fall" within Title VII to constitute protected activity for purposes of a retaliation claim.

*Id.* (citations omitted). In *Maner*, the plaintiff alleged that he was retaliated against after he complained about workplace favoritism of his supervisor's romantic partner. *Id.* at 904–05. Applying *Learned*, this Court found that the plaintiff did *not* have a reasonable belief that the employer's conduct violated Title VII because federal courts "widely held" that workplace favoritism of a romantic partner was not sex-based discrimination under Title VII. *Id.* at 909. Had this Court applied *Moyo*, the result may have been different; whether the alleged favoritism "fairly fell" within Title VII would have been irrelevant and the plaintiff's limited knowledge and mistake of law may have saved his retaliation claim.

As Defendant points out in its Reply, (Doc. 29 at 3), other courts in the Ninth Circuit have applied *Learned*'s "fairly fall" test to the reasonable belief analysis. *See Dorn-Kerri v. Sw. Cancer Care*, 385 Fed. Appx. 643, 644 (9th Cir. 2010) (affirming summary judgment for employer on Title VII retaliation claim where plaintiff alleged retaliation for complaint he made about unlawful billing practices because Title VII does not cover billing practices); *Sherrill v. Blank*, No. CV-13-00266-TUC-RCC, 2013 WL 11312398, at *2 (D. Ariz. Nov. 26, 2013) (dismissing plaintiff's retaliation claim because her complaint to employer described only "general, non-discriminatory workplace disagreements" rather than conduct prohibited under Title VII); *Fisk v. McHugh*, No. 1:13-cv-00862-LJO-SAB, 2013 WL 3199061, at *3 (E.D. Cal. June 21, 2013) (plaintiff's EEOC complaint alleging disability discrimination did not allege conduct falling within Title VII because Title VII does not prohibit disability discrimination); *Thacker v. GPS Insight, LLC*, No. CV18-0063-PHX-DGC, 2019 WL 3816720, at *4 (D. Ariz. Aug. 14, 2019) ("[M]ere assertions of hostility are insufficient to constitute protected activity without alleging discrimination or harassment based on . . . [a] Title VII protected category."; "[C]omplaints about conduct are not protected for purposes of a retaliation claim unless the conduct 'fairly falls within the protection of Title VII.'"); *Padilla v. Bechtel Const. Co.*, No. CV 06 286 PHX LOA, 2007 WL 1219737, at *6 (D. Ariz. Apr. 25, 2007) (plaintiff's EEOC complaint alleging

safety violations not "protected activity" because elimination of safety violations "does not 'fairly fall within the protection of Title VII to sustain a [retaliation claim]'").

Turning to the present case, the Court first pauses to acknowledge that the above cases—applying *Learned*'s "fairly fall" test—do not perfectly analogize to the facts of this case. In those cases, the plaintiffs complained about employer conduct which *clearly* fell outside Title VII—e.g., complaints about unlawful billing practices or disability discrimination. Here, in contrast, Plaintiff's complaint concerned Defendant's failure to pay her for hours worked after school. On first glance, such a complaint would seem to fall squarely *within* the FLSA, a statute that governs wage and hour practices. However, this view fails to account for Plaintiff's exempt status as a teacher. As noted above, teachers are explicitly exempted from the wage and hour protections of the FLSA, something the parties here do not dispute. The outcome thus turns on how the "fairly fall" test accounts for Plaintiff's exempt status. The parties fail to cite to, and this Court is itself unaware of, any Ninth Circuit caselaw addressing this question.

However, the Court finds Defendant's citations to Eleventh Circuit caselaw to be helpful. For starters, the Eleventh Circuit, like the Ninth, recognizes that a plaintiff does not have to prove that the employer's alleged conduct was *actually* unlawful; it is enough that the plaintiff reasonably believed that it was. *See Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). In other words, both Circuits adhere to the reasonable belief standard. In applying the reasonable belief standard, however, the Eleventh Circuit has specifically held that the standard has both a subjective and an objective component. *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). The subjective prong asks whether the plaintiff "subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices." *Id.* The objective prong asks whether such belief was "objectively reasonable in light of the facts and record presented." *Id.*

While the Ninth Circuit has never *explicitly* separated the standard into objective and subjective components in this manner, caselaw suggests that the Ninth Circuit's

analysis has taken both into consideration—look no further than the tensions between *Learned* and *Moyo*. In *Learned*, the Ninth Circuit implies an objective approach by asking whether the opposed conduct "fairly falls" within the protection of the statute, regardless of whether the plaintiff subjectively believed it did or not. *Learned*, 860 F.2d at 932. In *Moyo*, the Ninth Circuit even refers to the standard as an objective one, before cautioning that the standard must also make "due allowance . . . for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims." *Moyo*, 40 F.3d at 985; *see also Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996) (suggesting subjective standard by finding instructive whether the plaintiff's complaint was "brought in bad faith or meant to harass [the defendant]").

Given the similarities between the Eleventh and Ninth Circuit approaches—namely, that both apply the reasonable belief standard and that both seem to assess reasonableness objectively *and* subjectively—this Court finds the Eleventh Circuit caselaw cited by Defendant to be persuasive. This is notable because courts in the Eleventh Circuit have addressed the exact issue presently before this court: whether a plaintiff's exempt status under the FLSA renders unreasonable her belief that the alleged conduct was unlawful.

In *Keith v. University of Miami*, for example, the plaintiff was an adjunct professor who worked part-time and was paid by the hour. 437 F. Supp. 3d 1167, 1170 (S.D. Fla. 2020). As a result, she was only paid for the time she spent in the classroom (and not for time spent otherwise preparing for classes and for other administrative duties) and was excluded from enrollment in a healthcare program. *Id.* The plaintiff complained and was subsequently fired, which led to her filing a claim for retaliation under the FLSA. *Id.* at 1170–71. In conducting the reasonable belief analysis, the court noted that the plaintiff, as a teacher, was exempted from the FLSA's overtime provisions. *Id.* at 1171. As a result, the court held that—*even assuming* the plaintiff met the subjective prong by showing that she was unaware of her exempt status and that she in good faith believed that she was protected under the FLSA—the plaintiff failed to meet the objective prong because of her exempt status. *Id.* at 1172.

Other Eleventh Circuit cases align with *Keith* in holding that employees who are clearly and explicitly exempted from FLSA coverage cannot successfully raise an FLSA retaliation claim because they fail to meet the objective prong. *See, e.g.*, *Est. of Roig v. United Parcel Serv., Inc.*, No. 20-CV-60811, 2020 WL 6875790, at *20–21 (S.D. Fla. Sept. 30, 2020) ("[T]he state of the law is not in flux with respect to [the plaintiff's] status as an exempt employee [under the FLSA]. Thus, it is not possible to satisfy the reasonable, objective component, rendering [the plaintiff's] retaliation claim impossible."); *Langston v. Lookout Mountain Cmty. Servs.*, No. 4:16-CV-00239-HLM-WEJ, 2017 WL 6612866, at *15 (N.D. Ga. Oct. 11, 2017) ("[B]ased on her many managerial duties, it is clear that plaintiff was properly classified as an exempt executive. . . . Thus, even assuming plaintiff subjectively believed that she was entitled to overtime compensation and made that complaint to [her employer], any such belief was not objectively reasonable."); *Kaplan v. Burrows*, No. 6:10-cv-95-Orl-35DAB, 2011 WL 13298585, at *6 (M.D. Fla. Mar. 8, 2011) ("A complainant can be wrong in his assertion of an FLSA violation but still raise an objectively reasonable complaint, particularly where the claim at issue is suffused with uncertainty because the state of the law is in flux or because the factual peculiarities surrounding the case pose a novel legal question. This is not that sort of matter. . . . Because Plaintiff was not a protected individual under the FLSA at the time he lodged his complaint and could not have reasonably believed he was a protected employee and, therefore, engaged in a protected activity at that time, the Court finds that Plaintiff has failed to establish a prima facie case for retaliation.").[5]

---

[5] Plaintiff's citation to *Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1315–16 (N.D. Ga. 2019), shows that district courts in the Eleventh Circuit remain at least somewhat in conflict on the effect of FLSA exemption. In *Moakler*, the court held that the plaintiff had an "objectively good faith reasonable belief" that her employer's conduct was unlawful *despite* her exempted status under the FLSA. *Id.* at 1316; *see also Cedano v. Alexim Trading Corp.*, No. 11-20600-CIV, 2011 WL 5239592, at *4 (S.D. Fla. Nov. 1, 2011) ("Plaintiffs' exemption from the . . . FLSA does not preclude them from bringing a claim under the retaliatory firing provision of the FLSA."). The holding in *Moakler* was due, at

///
///

Here, the Court finds that Plaintiff's exempt status precludes her from showing that she reasonably believed that Defendant's alleged conduct was unlawful. Plaintiff's Amended Complaint pleads facts supporting that she may have honestly and in good faith believed that she was entitled to be paid and that Defendant's refusal to do so was unlawful.[6] However, even accepting these facts as true and construing them in Plaintiff's favor, as this Court is required to do on a motion to dismiss, the fact remains that the FLSA explicitly exempts her from the wage and hour provisions. While Plaintiff was not required to prove that Defendant's conduct *in fact* violated the FLSA, the conduct still had to "fairly fall" within the FLSA's protection under Ninth Circuit law. *Learned*, 860 F.2d at 932. Just as Title VII did not protect against discrimination based upon physical and mental limitations in *Learned*, the FLSA simply does not provide minimum wage protections to teachers like Plaintiff. The law is clear; Plaintiff's status as an exempt employee under the FLSA is not in flux. Therefore, the conduct Plaintiff opposed does not "fairly fall" within the protection of the FLSA. *See Maner*, 350 F. Supp. 3d at 909 (finding that conduct did not "fairly fall" within Title VII protection when state of law was clear that conduct did

---

least in part, to the court's reluctance to apply Title VII caselaw to the FLSA context. *Moakler*, 374 F. Supp. 3d at 1315–16.

Plaintiff's citations to *Stewart v. VSMB, LLC*, No. 1:19 cv-22593-UU, 2020 WL 4501937 (S.D. Fla. June 29, 2020) and *Edgecomb v. Lowes Home Centers, LLC*, 391 F. Supp. 3d 1145 (S.D. Fla. 2019) are easily distinguished and unpersuasive. Neither case involved an argument that the plaintiffs were clearly exempted from the FLSA. Instead, each involved arguments that the plaintiff's FLSA claims failed for other reasons. These two cases merely underscore the principle that a retaliation claim does not become unavailable simply because the underlying FLSA claim fails.

[6] Specifically, Plaintiff alleges that she agreed to teach the after-school robotics class with the understanding that she would be paid for it, as Principal Rantala told her that she would be paid for her work once the billing code process was complete. (Doc. 21 at 7). Plaintiff alleges that the billing code process was delayed, and that she logged at least eight unpaid hours of work. (*Id.* at 7–8). Plaintiff alleges that she believed this was an unlawful wage and hour practice by Defendant, prompting her complaint to HR. (*Id.*). Plaintiff also alleges that the HR representative agreed that she had to be paid, further justifying her belief that Defendant's failure to do so was unlawful. (*Id.*).

not constitute Title VII discrimination). As a result, it is not possible for Plaintiff to satisfy the reasonable belief standard, which in turn means that she did not engage in a protected activity when she complained to Defendant. This Court finds that Plaintiff has failed to state a prima facie case for FLSA retaliation, and her claim is dismissed as a result.

### B. Due Process Claim

"To state a claim under the Due Process Clause, a plaintiff must first establish that [she] possessed a 'property interest' that is deserving of constitutional protection." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) (citing *Gilbert v. Homar*, 520 U.S. 924 (1997)). Here, the parties do not dispute that Plaintiff—as a certified, probationary public-school teacher—had a constitutionally protected property interest in her continued employment. Nor do the parties dispute what this means—that is, that Plaintiff was entitled to certain due process procedures, such as notice and a hearing, before her employment could be terminated. (*See* Doc. 25 at 5 (Defendant acknowledging that Plaintiff had a constitutional property interest in continued employment that entitled her to certain due process rights)).

The parties' dispute instead centers around whether she voluntarily resigned or was constructively discharged. Defendant contends the former, and that such resignation acted as a waiver of Plaintiff's due process rights. (*Id.* at 5–6). Plaintiff was issued a "preliminary notice of inadequacy," which Defendant asserts did not itself terminate her employment. Rather, it was the first step in commencing a "comprehensive process" that would have afforded her with due process *before* any termination decision was made. (*Id.*). Defendant's argument is that Plaintiff voluntarily resigned upon receiving the Pre-Terminative Discipline, in effect waiving the comprehensive process that would have afforded her with due process. (*Id.*). Plaintiff, on the other hand, concedes that she resigned but argues that her resignation amounted to a constructive discharge that resulted from an ultimatum from Defendant. (Doc. 28 at 2). Plaintiff contends that she was therefore entitled to notice and a hearing, neither of which she received. (*Id.* at 13). Plaintiff characterizes the issue of whether she resigned or was constructively discharged as a factual dispute that should be

resolved in her favor at the motion-to-dismiss stage of the action. (*Id.*).

It is true that an employee relinquishes her due-process-protected property interests by voluntarily resigning. *See Knappenberger v. City of Phx.*, 566 F.3d 936, 942 (9th Cir. 2009). However, courts—including the Ninth Circuit—have recognized that a resignation may be *involuntary* and amount to a constructive discharge, which in turn can serve as the basis for a § 1983 due process claim. *Id.* at 941 (discussing constructive discharge and holding that a "resignation may be involuntary and constitute a deprivation of property for purposes of a due process claim").[7]

In *Knappenberger*, the Ninth Circuit recognized two scenarios in which an employee can demonstrate that she was constructively discharged: (i) resignation or retirement due to intolerable or discriminatory working conditions; or (ii) resignation or retirement due to coercion by the employer.[8] *Id.* The Ninth Circuit aligned itself with other

---

[7] *See also Lauck v. Campbell Cnty.*, 627 F.3d 805, 813 (10th Cir. 2010) ("This is not to say that there is no such thing as a due-process constructive-discharge claim. . . . An employer cannot circumvent the due-process requirements that would attend a true firing by trying to compel a resignation in a manner that violates the employee's property . . . rights."); *Buchanan v. Little Rock Sch. Dist. of Pulaski Cnty., Ark.*, 84 F.3d 1035, 1038 n.3 (8th Cir. 1996) ("[H]ad she been terminated or had her transfer amounted to a constructive termination, the due process clause could have been implicated"); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988) ("If, on the other hand, [plaintiff's] 'resignation' was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause. A public employer obviously cannot avoid its constitutional obligation to provide due process by the simple expedient of forcing involuntary 'resignations.'"); *Fowler v. Carrollton Pub. Libr.*, 799 F.2d 976, 981 (5th Cir. 1986) ("Constructive discharge in a procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures.").

[8] Defendant's argument appears to only consider the first type of constructive discharge—*i.e.*, resignation or retirement due to intolerable or discriminatory working conditions. (Doc. 29 at 7 (stating a constructive discharge claim "requires a showing that 'a reasonable person in plaintiff's position would have felt compelled to quit *because of intolerable and discriminatory working conditions*'")). However, as *Knappenberger* explains, a plaintiff can also assert a constructive discharge claim under a "coercion or duress" theory. *See Knappenberger*, 566 F.3d at 940–42.

15

circuits, adopting a "duress or coercion" theory of constructive discharge under which "a resignation may be found involuntary if, from the totality of the circumstances, it appears that the employer's conduct in requesting or obtaining the resignation effectively deprived the employee of free choice in the matter." *Id.* (quoting *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1544 (8th Cir. 1992)). "It is the employee's burden to come forward with sufficient evidence to demonstrate that 'a reasonable person in [her] position would feel [she] had no choice but to retire.'" *Id.* (citing *Kalvinskas v. Cal. Inst. of Tech.*, 96 F.3d 1305, 1308 (9th Cir. 1996)). The Ninth Circuit provided several factors, none being dispositive, to govern the inquiry into whether a resignation was the product of coercion:

> In evaluating such claims of coercion, we determine voluntariness by an objective standard, rather than by the employee's purely subjective evaluation; reject cases in which the employee did have a choice, even if between comparatively unpleasant alternatives; and consider additional case-specific factors that cut against a finding of coercion, such as whether the employee was given an alternative to resignation or retirement, understood the choice, had a reasonable time in which to decide, or could select the timing of the retirement or resignation.

*Id.* (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568–70 (11th Cir. 1995) and *Angarita*, 981 F.2d at 1544).

Here, this Court finds that Plaintiff has adequately stated a plausible Due Process claim because she pleaded facts that, when taken as true and construed in her favor, demonstrate (i) that a reasonable person in her position would have felt she had no choice but to resign (*i.e.*, that she was constructively discharged) and (ii) that she was denied due process procedures prior to her constructive discharge. Specifically, Plaintiff alleges that after she made her Wage and Hour Complaint, Rantala immediately delivered "two shockingly-low performance evaluations" to Plaintiff which "eviscerated" Plaintiff's otherwise stellar teaching record and threatened her continued employment with Defendant. (Doc. 21 at 9–10). The poor evaluations triggered the issuance of the Pre-Terminative Discipline and its remediation plan, which subjected Plaintiff to dismissal if she failed to satisfy the remediation requirements. (*Id.* at 10). Plaintiff alleges that she

began experiencing severe anxiety, stress, panic attacks, and difficulty sleeping. (*Id.* at 11). She also alleges that she felt vulnerable, targeted, and unprotected, and that she came to dread the time she spent at work. (*Id.*). Plaintiff wrote a letter complaining about the retaliation to HR, explaining her concern for her own safety and well-being at work and expressing her need for assistance. (*Id.*). Plaintiff alleges that this letter was entirely ignored by Defendant. (*Id.*). Days later, Plaintiff was advised by her doctor to take a medical leave of absence due to the anxiety, stress, and depression that work was causing her. (*Id.*). While she was out on medical leave, Plaintiff alleges that Defendant imposed Pre-Terminative Discipline against her and locked her out of the computer system. (*Id.* at 12–14). Finally, Plaintiff alleges that she was presented with an ultimatum that left her no choice but to resign. (*Id.* at 14). Plaintiff alleges that she was told that she had three options to avoid a finding of "contract abandonment" and "the resulting stigma and professional consequences" of such a determination:

> (i) immediately return to the un-remediated hostile work environment;
>
> (ii) obtain approval for indefinite, unpaid FMLA leave; or
>
> (iii) resign effective March 16, 2020 and pay Defendant $2,000 in liquidated damages to be released from her 2019/2020 teaching contract.

(*Id.*). Plaintiff alleges that her health prevented an immediate return to the un-remediated hostile work environment and that she could not afford to take indefinite, unpaid leave. (*Id.*). As a result, Plaintiff alleges she had no choice but to resign and pay the $2,000 penalty; doing nothing would have left Plaintiff with a "contract abandonment" designation and jeopardized her chances of finding future employment as a teacher. (*Id.*).

The Court rejects Defendant's contention that Plaintiff's constructive discharge theory was supported only by "mere conclusory assertions." (Doc. 29 at 7). Instead, this Court finds that the above facts, construed in Plaintiff's favor, support a finding that a reasonable person in Plaintiff's position would have felt she had no choice but to resign. Thus, Plaintiff has sufficiently pleaded facts to support her claim that she was

constructively discharged. It follows that Plaintiff's pleading sufficiently states a Due Process claim because it is undisputed that Plaintiff never received notice or a hearing prior to her alleged constructive discharge. The Court denies Defendant's Motion to the extent it seeks to dismiss Plaintiff's Due Process claim.

### IV.     CONCLUSION

After taking all the material facts alleged in the Amended Complaint as true and construing them in favor of Plaintiff, the Court finds that Plaintiff has stated a plausible Due Process claim. Plaintiff has not, however, stated a plausible claim for retaliation under the FLSA.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 25) is **granted in part** as to Plaintiff's FLSA retaliation claim and **denied in part** as to Plaintiff's Due Process claim.

Dated this 28th day of March, 2022.

Honorable Steven P. Logan
United States District Judge